O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINO JORGE VIDAL, | ) Case No. CV 13-5413-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ) ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**I.**

**PROCEDURAL HISTORY**

On October 21, 2009, Dino Jorge Vidal ("Plaintiff") applied for Social Security Disability benefits. (Administrative Record ("AR") at 65, 131-32.) On May 13, 2010, his application was denied. (Id. at 75-79.) On September 27 2010, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which took place on December 6, 2011. (Id. at 49-64, 88.) On December 28, 2011, the ALJ issued an unfavorable decision to Plaintiff. (Id. at 34-44.) Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied review on May 22, 2013. (Id. at 1-4.) Thus, the ALJ's decision is the Commissioner's final decision in this matter.

On August 8, 2013, Plaintiff filed a Complaint seeking review in this Court of the Commissioner's decision denying Social Security benefits ("Complaint"). (ECF No. 3.) On December 20, 2013, Defendant filed an Answer to the Complaint. (ECF No. 16.) On December 26, 2013, Plaintiff filed a Motion for Summary Judgment ("MSJ"). (ECF No. 18.) On January 27, 2014, Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Cross MSJ"). (ECF No. 19.) On February 20, 2014, Plaintiff filed a Response to Defendant's Cross-Motion ("Response"). (ECF No. 20.)

## II.

## **DISPUTED ISSUES**

As reflected in the Complaint, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the ALJ properly considered the testimony of the Vocational Expert ("VE");

(2) Whether the ALJ erred in affording greater weight to the orthopedic consultative examiner;

(3) Whether the ALJ properly rejected treating source opinions; and

(4) Whether the ALJ failed to properly consider whether Plaintiff's condition meets or medically equals Listing 1.02 A and B.

(Compl. at 4.)

## III.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402

U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## IV.
## DISCUSSION

**A.     The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of status post bilateral shoulder arthroplasty; right knee fracture, status post surgery; and depressive disorder, NOS. (AR at 39.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work except for occasional climbing, bending, kneeling, stooping, crouching, crawling, and reaching overhead bilaterally, and with mild restrictions in activities of daily living, mild difficulties maintaining social functioning, and mild difficulties maintaining concentration and pace. (Id. at 41.) Relying on the testimony of a VE, the ALJ concluded that Plaintiff was not capable of performing his past relevant work as a school janitor, but Plaintiff could perform alternative work as a small products assembler. (Id. at 43.)

**B.     New Evidence Presented to Appeals Council.**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's final decision to determine if: (1) the Commissioner's findings are supported by substantial evidence, and (2) the Commissioner used correct legal standards. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008);

Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (citation omitted) (internal quotation marks omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).

Moreover, when the Appeals Council "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011). When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence based on the record as a whole. Brewes, 682 F.3d at 1161-62.

Here, Plaintiff presented additional medical evidence to the Appeals Council, and the Appeals Council ordered that the new evidence be made part of the record. (AR at 6-32.) Accordingly, the Court must consider this new evidence in determining whether the ALJ's decision was supported by substantial evidence.

**C.  The ALJ's Decision to Afford Greatest Weight to the Consultative Examiners Is Not Supported by Substantial Evidence.**

   **1.  There Was No Error in Discounting the Opinions of Physician Assistant, Kay Roberts.**

Plaintiff argues that the ALJ erred in affording great weight to the findings of the consultative examiners and rejecting the opinions of treating source physician assistant, Kay Roberts. (Compl. at 4.)

The ALJ noted that there was very little evidence of treatment before him.

(AR at 40.)  Essentially, the record at the hearing level consisted of treatment notes from physician assistant, Kay Roberts, and reports from agency physicians.  The ALJ gave the most weight to the conclusions of the consultative examiners who found that Plaintiff was capable of performing light work with postural and manipulative limitations.  (Id.)  The ALJ gave no weight to the opinions of Kay Roberts "because [they] address[] shoulder fractures, yet assess sitting and standing at 3 and 4 hours respectively.  This is not credible, therefore, this assessment is not acceptable."  (Id.)

First, the Court notes that the ALJ properly rejected the opinions of Kay Roberts.  Social Security Ruling 06-03p provides in part:

> . . . [O[nly 'acceptable medical sources' can give us medical opinions . . . only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight . . . .  In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.  These sources include, but are not limited to: Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . . .  Information from these 'other sources' cannot establish the existence of a medically determinable impairment . . .

Soc. Sec. R. 06-03p.  Because physician assistants are not "acceptable medical sources," their opinions are reviewed under the lay witness standard, rather than the physician's standard of review.  See Gutierrez v. Astrue, No. ED CV 10-1401-SP, 2011 WL 4914649 (C.D. Cal. Oct. 17, 2011) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) ("other sources" may be expressly

disregarded as lay witness testimony if the ALJ gives reasons germane to the witness for doing so). Thus, lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Kus v. Astrue, 276 Fed. App'x 555, 556-57 (9th Cir. 2008) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

The Court does not consider the persuasiveness of the ALJ's reasons for rejecting Kay Roberts' opinions. Ultimately, the ALJ provided reasons that were germane to the witness and the evidence. Thus, the ALJ fulfilled his duty to consider the evidence and provide reasons for rejecting it.

### 2. The "New Evidence" Submitted to the Appeals Council Was Relevant to Plaintiff's Claims.

More vital to the outcome of Plaintiff's application are the records submitted to the Appeals Council following the ALJ's decision. Medical evidence related to Plaintiff's workers compensation claim was presented to the Appeals Council along with Plaintiff's request for review of the ALJ's decision, and was accepted and considered by the Appeals Council. (AR at 6-26.) Accordingly, the Court must consider this evidence in deciding whether the ALJ's decision was supported by substantial evidence. Brewes, 659 F.3d at 1232.

Specifically, the Appeals Council decision stated that it considered medical evidence "from Joshua Medical Group, the narrative report and multiple impairment questionnaire by Dr. Steiger." (AR at 2.) The Appeals Council noted that the ALJ decided Plaintiff's case through December 28, 2011, and that this evidence "is about a later time," and does not "affect the decision about whether you were disabled beginning on or before December 28, 2011." (Id.) The Court is unable to locate these documents in the record and, therefore, cannot comment on their relevance. The Appeals Council "Exhibits List" indicates only that the additional evidence it had received and made part of the record was Exhibit 12E,

"Statement of contentions by Pamela Noblitt dated February 23, 2012," consisting of the appeal letter from Plaintiff's counsel setting forth his contentions to the Appeals Council. (Id. at 5 (citing id. at 212-14).) There are no additional documents attached to this letter.

Not mentioned at all by the Appeals Council or the ALJ are a number of other documents presumably submitted to the Appeals Counsel after the hearing.[1] (Id. at 9-33.) This evidence brings Plaintiff's catastrophic shoulder injury into sharper focus and details the extent of his physical limitations. Significantly, in a March 24, 2004, agreed medical examination report, orthopedic surgeon Roger S. Sohn, M.D., noted that Plaintiff's shoulders were "doing very poorly" and that "quite frankly this was just a miserable injury." (Id. at 24.) Dr. Sohn indicated that Plaintiff had lost 75 percent of his strength, and 75 percent of his ability to lift, grip, grasp, push, pull, and torque. (Id. at 24, 25.) Dr. Sohn recommended that Plaintiff avoid work at or above shoulder level. (Id. at 24, 25.) In addition, a February 12, 2004, Permanent and Stationary Report by treating orthopedic surgeon Vincent L. Gumbs, M.D., found that Plaintiff was similarly precluded from work at or above shoulder level. (Id. at 13.)[2]

The Court is particularly concerned about the Commissioner's failure to consider this new evidence where the ALJ specifically commented there was "very little evidence of treatment" (id. at 40) regarding what Dr. Sohn described as a

---

[1] The Court Transcript Index notes that these documents are part of the "Request for Review of Hearing Decision/Order (HA520), dated 01/30/2012." (AR at Index preceding id. at 1.)

[2] The Court recognizes that the evidence from Drs. Sohn and Grumbs predates the alleged onset date of disability. However, it appears these reports are material to Plaintiff's current claim of impairment and should be considered by the ALJ. Compare Carmickle, 533 F.3d at 1165 (medical opinions that predate alleged onset date are of limited relevance, especially where disability is caused by discrete event that occurred after the medical opinions at issue).

"miserable injury" (id. at 24), and where Plaintiff contends he has been unable to seek extensive medical treatment due to a lack of health insurance. (Response at 5.)

Because it is unclear whether the final decision took into consideration this new evidence, the Court cannot find that the decision to afford greater weight to the consultative examiners was supported by substantial evidence.

**D.  The ALJ's Hypothetical to the Vocational Expert Did Not Account for the New Evidence.**

Plaintiff further argues that the ALJ erred in failing to consider the testimony of the VE. (Compl. at 4.)

The ALJ presented the following hypothetical question to the VE:

> Hypothetically, let's consider an individual who . . . could not do the janitorial work, but he could do light work although it would be reduced somewhat. He would only be able to occasionally engage in the posturals and only occasionally be able to engage in any overhead activity, bilaterally, and he could understand and follow simple instructions and some lower level detailed instructions. Would, in your opinion, this person be able to perform any unskilled, light work?

(AR at 61.) Based on this hypothetical, the VE testified that such an individual could perform the job of small products assembler. (Id.) The ALJ relied on this expert opinion in finding Plaintiff not disabled. (Id. at 43.)

However, the VE offered additional testimony that was not relied upon by the ALJ in denying Plaintiff's claim. Most notably, the VE testified that if an individual with the same limitations as the first hypothetical additionally was unable to grasp or grip fifty percent of the time, the individual could not perform work as a small products assembler. (Id. at 63.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both

8

physical and mental' supported by the record." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

     Here, the new evidence indicates that Plaintiff could not perform any work at or above shoulder level, and had lost sevety-fove percent of his ability to lift, grip, grasp, push, pull, and torque. (AR at 13, 24, 25.) If the ALJ were to consider and credit these findings, it would not only render the testimony of the VE unreliable to the extent the expert testified Petitioner could perform work as a small products assembler, it would highlight the VE's testimony that an individual with such limitations would not be able to perform such work. Accordingly, this action must be remanded for the ALJ to obtain additional VE testimony in light of the ALJ's consideration new evidence.[3]

---

    [3] Plaintiff has not presented the issue of the ALJ's credibility determination to the Court. However, because the ALJ will be considering the weight to give the additional new evidence, it may also be necessary and proper to reconsider Plaintiff's subjective complaints of impairment, and to include those impairments, if appropriate, within the hypothetical question posed to the VE on remand. The
(continued...)

**E.      The ALJ Did Not Err in Failing to Consider Listing 1.02A or B.**

Finally, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff's impairments met or equaled Listing 1.02 A or B. (Compl. at 4.) "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (citation omitted); Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Listing 1.02 requires the following:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> 
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
> 
>       or
> 
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.
> 
> 20 C.F.R. § 404, Subpart P, Appx 1 § 1.02.

In turn, 1.00B2b defines the "inability to ambulate effectively" as follows:

> (1) . . . [A]n extreme limitation of the ability to walk; i.e., an

---

[3](...continued)
Court expresses no opinion as to the issue of Plaintiff's credibility.

impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. at § 1.00B2b.

In addition, 1.00B2c defines the inability to "perform fine and gross movements effectively" as follows:

[A]n extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of

11

1  inability to perform fine and gross movements effectively include, but
2  are not limited to, the inability to prepare a simple meal and feed oneself,
3  the inability to take care of personal hygiene, the inability to sort and
4  handle papers or files, and the inability to place files in a file cabinet at
5  or above waist level.

Id. at § 1.00B2c.

The evidence does not support a finding that Plaintiff's medical impairments meet or equal Listing 1.02 A or B, as he does not have the inability to ambulate effectively or the inability to perform fine and gross movements effectively. Plaintiff can walk without the assistance of a companion, walker, cane, or crutches. In fact, except for an antalgic gait, Plaintiff ambulates quite independently and effectively. (AR at 55, 240; see id. at 186.) Moreover, the record shows that Plaintiff maintains sufficient ability to perform fine and gross movements to carry out activities of daily living, such as preparing simple meals, performing light chores, and maintaining personal hygiene. (Id. at 56, 184-86.)

Because the medical evidence does not support a finding that Plaintiff's impairments meets or equal Listing 1.02 A or B, the ALJ did not err in failing to consider this issue.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**V.**
**ORDER**

1  Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be
2 entered reversing the decision of the Commissioner of Social Security, and
3 remanding this matter for further administrative proceedings consistent with this
4 Memorandum and Opinion.

6 DATED: April 29, 2014

  _____
  HONORABLE OSWALD PARADA
  United States Magistrate Judge